**PELTON GRAHAM LLC**
Brent E. Pelton, Esq.
Taylor B. Graham, Esq.
Alison L. Mangiatordi, Esq.
111 Broadway, Suite 1503
New York, NY 10006
Telephone: (212) 385-9700
www.peltongraham.com

*Attorneys for Plaintiff, the putative FLSA and EPA
Collectives and Classes*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **APRIL GORDON, Individually and On Behalf of All Others Similarly Situated,**<br><br>**Plaintiff,**<br><br>-against-<br>**SPACIOUS LIVING GROUP, LLC d/b/a SLG CONSTRUCTION,**<br><br>**Defendant.** | **CLASS & COLLECTIVE ACTION COMPLAINT**<br><br>**Jury Trial Demanded** |

Plaintiff April Gordon ("Gordon" or "Plaintiff"), individually and on behalf of all others similarly situated, as collective and class representative, upon personal knowledge as to herself and upon information and belief as to other matters, alleges as follows:

### NATURE OF THE ACTION

1.       Plaintiff is a former construction flagger who worked for Defendant on public projects on New York City roadways. Throughout her employment with Defendant, Plaintiff received overtime premiums only for certain hours that she worked in excess of forty (40) in a week, resulting in substantial unpaid overtime wages.

2.     Plaintiff was also not paid the applicable prevailing rate of wages or supplemental benefits for all hours that she worked on water main, sewer and other public works projects on New York City roadways.

3.     Finally, Plaintiff and other women were paid a lower rate of pay than men who were performing the same work.

4.     Plaintiff brings this action to recover unpaid overtime premium pay owed to her and members of the putative Collective and Class pursuant to both the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201 *et seq.* and the New York Labor Law ("NYLL"), §§ 650 *et seq.* Plaintiff also seeks to recover unpaid prevailing wages, daily overtime and supplemental benefits which she and the members of the putative Class were entitled to receive for work, including weekend, evening and holiday work, they performed pursuant to contracts entered into between Defendants and public entities, including, but not limited to, New York City Department of Transportation ("DOT") and New York City Department of Design and Construction ("DDC") which required payment of prevailing wages.

5.     Plaintiff also brings claims for Defendant's failure to provide proper wage notices and wage statements pursuant to NYLL §§ 190 *et seq.*

6.     Further, Plaintiff brings claims to recover for Defendants' discrimination against her on the basis of sex in violation of the Equal Pay Act of 1963 ("Equal Pay Act" or "EPA"), 29 U.S.C. § 206(d), the New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.*, the Administrative Code of the City of New York, ("New York City Human Rights Law" or ("NYCHRL") § 8-107 *et seq.* and the New York Equal Pay Act ("NY EPA"), NYLL § 194 *et seq.*

7.     Plaintiff brings her FLSA claims on behalf of herself and other construction flaggers who worked for Defendants and her EPA claims on behalf of herself and all other women who worked as construction flaggers for Defendants.

8.     Plaintiff brings her NYLL and New York common law claims on behalf of herself and a Federal Rule of Civil Procedure 23 class of all construction flaggers who worked for Defendants in New York, her NYHRL NYCHRL and NY EPA claims on behalf of a class of all women construction flaggers working for Defendants in New York.

## JURISDICTION AND VENUE

9.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1331, 1337 and 1343, and supplemental jurisdiction over Plaintiff's state law claims pursuant to 28 U.S.C. § 1367.

10.     In addition, the Court has jurisdiction over Plaintiff's claims under the FLSA pursuant to 29 U.S.C. § 216(b).

11.     Venue is proper in this district pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this district.

12.     This Court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

## THE PARTIES

**Plaintiff:**

13.     Plaintiff Gordon was, at all relevant times, an adult individual residing in Bronx County, New York.

14.     Throughout the relevant time period, Plaintiff performed work for Defendant on roadways throughout the New York City area.

3

15.     Plaintiff consents in writing to be party to this action, pursuant to 29 U.S.C. § 216(b), and her consent form is attached hereto.

16.     At all relevant times, Plaintiff was an employee of Defendant as defined in the FLSA, EPA, NYLL, NYSHRL and NYCHRL.

**Defendant:**

17.     Defendant Spacious Living Group, LLC is an active New York corporation doing business as "SLG Construction" ("SLG" or "Defendant") with its principal place of business located at 450 7ᵗʰ Avenue, Floor 31, New York, NY 10123.

18.     At all relevant times, Defendant was an employer as defined in the FLSA, EPA, NYLL, NYSHRL and NYCHRL.

19.     Upon information and belief, at all relevant times, the Defendant had gross annual revenues in excess of $500,000.00.

20.     At all relevant times, Defendant has been and continues to be an employer engaged in interstate commerce and/or the production of goods for commerce, within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

21.     At all relevant times, Defendant employed, and/or continue to employ, Plaintiff and each of the Collective Action members within the meaning of the FLSA.

22.     At all relevant times, Plaintiff and Class Members were employed by Defendant within the meaning of the NYLL, §§ 2 and 651.

**COLLECTIVE ACTION ALLEGATIONS**

**Unpaid Overtime Collective**

23.     Pursuant to 29 U.S.C. §§ 207 & 216(b), Plaintiff brings her First Cause of Action

as a collective action under the FLSA on behalf of herself and the following collective:

> All persons employed by Defendant at any time since May 21, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction flaggers (the "Unpaid Overtime Collective Action Members").

24.     A collective action is appropriate in this circumstance because Plaintiff and the Unpaid Overtime Collective Action Members are similarly situated, in that they were all subjected to Defendant's illegal policy of failing to pay overtime premiums for all work performed in excess of forty (40) hours each week. As a result of this policy, Plaintiff and the Unpaid Overtime Collective Action Members did not receive the legally-required overtime premium payments for all hours worked in excess of forty (40) hours per week.

25.     Plaintiff and the Unpaid Overtime Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

**Equal Pay Collective**

26.     Pursuant to 29 U.S.C. §§ 206(d) & 216(b), Plaintiff brings her Second Cause of Action as a collective action under the EPA on behalf of herself and the following collective:

> All women employed by Defendant at any time since May 21, 2017 and through the entry of judgment in this case (the "Collective Action Period") who worked as construction flaggers (the "Equal Pay Collective Action Members").

27.     A collective action is appropriate in this circumstance because Plaintiff and the Equal Pay Collective Action Members are similarly situated, in that they were all subjected to Defendant's illegal policy of paying women at a lower rate than men in the same position. As a result of this policy, Plaintiff and the Equal Pay Collective Action Members did not receive equal pay as men for all hours worked for the same job.

28.     Plaintiff and the Equal Pay Collective Action Members have substantially similar job duties and were paid pursuant to a similar, if not the same, payment structure.

## NEW YORK FED. R. CIV. P. 23 CLASS AND SUBCLASS ALLEGATIONS

**Unpaid Wages Class**

29.     Pursuant to the NYLL and New York common law, Plaintiff brings her Third through Seventh Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following class:

> All persons employed by Defendant in New York at any time since May 21 2014 and through the entry of judgment in this case (the "Class Period") who worked as construction flaggers (the "Class Members").

30.     Pursuant to the NYLL, NYSHRL and NYCHRL, Plaintiff brings her Eighth through Tenth Causes of Action under Rule 23 of the Federal Rules of Civil Procedure on behalf of herself and the following sub-class:

> All women employed by Defendant in New York during the Class Period who worked as construction flaggers (the "Subclass Members").

31.     The Class and Subclass Members are readily ascertainable. The number and identity of the Class and Subclass Members are determinable from the records of Defendant. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendant. Notice can be provided by any means permissible under Federal Rule of Civil Procedure.

32.     The Class and Subclass Members are so numerous that joinder of all members is impracticable.

33.     Upon information and belief, there are in excess of forty (40) Class and Subclass Members.

34.     Common questions of law and fact exist as to all Class and Subclass Members and predominate over any questions solely affecting individual Class and Subclass Members.

Such common questions will determine Defendants' liability to all (or nearly all) Class and Subclass Members. These common questions include:

    a.  whether Defendant employed Plaintiff, Class Members and Subclass Members within the meaning of the NYLL, NYSHRL and NYCHRL;

    b.  whether Defendant failed to keep true and accurate time records for all hours worked by Plaintiff and the Class Members;

    c.  whether Defendant failed and/or refused to pay Plaintiff and the Class Members overtime premiums for all hours worked in excess of forty (40) hours per workweek;

    d.  whether Defendant breached contracts with local, state and/or federal governmental entities by failing to pay Plaintiff and the Class Members, who were third-party beneficiaries of such contracts, at New York State and/or New York City prevailing wage rates;

    e.  whether Defendants failed and/or refused to pay Plaintiff and the Class Members overtime hours at the prevailing wage overtime rates for all hours worked on prevailing wage projects in excess of forty (40) hours per workweek or eight (8) hours per day;

    f.  whether Defendant failed and/or refused to pay Plaintiff and the Class Members supplemental benefits on prevailing wage jobs as required by the New York City and New York State prevailing wage schedules;

    g.  whether Defendant was unjustly enriched by failing to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs;

    h.  whether Defendant failed to provide accurate wage notice to Plaintiff and Class

Members at the beginning of their employment and/or on February 1 of each year as required by the NYLL;

i. whether Defendant failed to pay the Subclass Members at a rate equal to men in the same position as required under the NYLL, NYSHRL and NYCHRL;

j. whether Defendant gave preferential treatment to men over the Subclass Members with respect to placing Subclass Members on jobs as required under the NYSHRL and NYCHRL;

k. whether Defendant sexually harassed the Subclass Members in violation of the NYSHRL and NYCHRL;

l. whether Defendant's failure to properly pay Plaintiff and the Class and Subclass Members lacked a good faith basis; and

m. whether Defendant is liable for all damages claimed hereunder, including but not limited to compensatory damages, liquidated damages, interest, costs and disbursements and attorneys' fees.

35.     Plaintiff's claims are typical of the Class and Subclass Members' claims. Plaintiff, like all Class and Subclass Members, was an employee of Defendant who worked for Defendant pursuant to its corporate policies. Plaintiff, like all Class and Subclass Members, was, *inter alia*, not paid overtime premium pay for all hours worked over forty (40) hours in a given workweek; not paid prevailing wages, supplemental benefits or daily/weekly overtime prevailing wages for work performed on New York City roadways; not provided proper wage statements with each of her wage payments; not provided proper wage notice when hired or before February 1 of each year; and experienced discrimination based on sex and was paid less than men for performing the same work.

36. Plaintiff, like all Subclass Members, experienced discrimination based on sex and was paid less than her male co-workers in the same position.

37. If Defendant is liable to Plaintiff for the claims enumerated in this Complaint, it is also liable to all Class and Subclass Members.

38. Plaintiff and her Counsel will fairly and adequately represent the Class and Subclass. There are no conflicts between Plaintiff and the Class and Subclass Members, and Plaintiff brings this lawsuit out of a desire to help all Class and Subclass Members, not merely out of a desire to recover her own damages.

39. Plaintiff's counsel are experienced class action litigators who are well-prepared to represent the interests of the Class and Subclass Members.

40. A class action is superior to other available methods for the fair and efficient adjudication of this litigation.

41. Defendant is a sophisticated party with substantial resources. The individual plaintiff lacks the financial resources to vigorously prosecute a lawsuit in federal court against corporate defendants.

42. The individual members of the Class and Subclass have no interest or capacity to bring separate actions; Plaintiff is unaware of any other currently pending litigation concerning this controversy; it is desirable to concentrate the litigation in one case; and there are no likely difficulties that will arise in managing the class action.

## STATEMENT OF FACTS

### Defendant's Company

43. Defendant "SLG Construction is a full service self-performing general contractor, construction manager, and labor provider located in Midtown Manhattan."

9

(www.slgconstruction.com).

44. "SLG Construction has been doing public sector projects since [its] inception. Explicit attention to detail and direction in all regards is required to make these jobs a success. We emerge from each job with unique experiences that translate very well in our private sector projects." *Id.*

45. On it's website, SLG boasts its work on the following public works projects:

   a. The City of New York Dept. of Design and Construction (DDC) PSCAC 911 Call Center Laborer + Drywall;

   b. City University Construction Fund (CUNY) 285 Jay Street High School Vestibule;

   c. New York Power Authority (NYPA): New York Police Department Forensic Investigation Division, College of Staten Island, Building 6S HVAC Modernization, Queens Supreme Court, Chiller Plant Replacement, Brooklyn Central Public Library Chiller Replacement; and

   d. NYC School Construction Authority (NYCSCA): PS 160 Collapsed Cafeteria Floor Repair, IS 192 Library Upgrade, PS 175 Library Upgrade, PS 290 Auditorium Upgrade, and Westinghouse High School Façade. *Id.*

46. Upon information and belief, SLG entered into these and other contracts as prime and/or sub-contractors with public entities that required all employees working on the projects, including Plaintiff and the Class and Subclass Members, to be paid prevailing wages.

**The Public Works Contracts**

47. Upon information and belief, Defendant has entered into certain contracts, as either a subcontractor or prime contractor, with public agencies to provide certain construction

flagging and other labor on New York City roadways (the "Public Works Contracts").

48.     Upon information and belief, the Public Works Contracts obligated Defendant to pay Plaintiff and the Class Members at or above the local prevailing wage rates, including any required supplemental benefits and overtime premiums for hours worked in excess of forty (40) hours per week, eight (8) hours per day, hours worked on Saturday and Sunday and hours worked during the evening. Defendant's failure to pay Plaintiff proper prevailing wage rates, supplemental benefits and overtime premiums was a corporate policy that also applied to all of Defendant's other similarly situated employees.

49.     As required by law, a schedule containing the prevailing rates of wages and supplemental benefits ("prevailing wage schedules") to be paid to the plaintiff Class and Subclass should have been annexed to and formed a part of the Public Works Contracts. If not annexed to the Public Works Contracts, these schedules were expressly or impliedly incorporated into the contracts as a matter of law and/or public policy.

50.     The promise to pay and ensure payment of the prevailing wage and supplemental benefit rate stated in the Public Works Contracts was made for the benefit of all workers furnishing labor on New York City roadways and, as such, the workers furnishing labor on New York City roadways are the beneficiaries of that promise and the contracts entered into between Defendant and government agencies.

51.     As employees of Defendant who were assigned to work on Defendant's publicly-financed projects, Plaintiff and the Class and Subclass Members were intended third-party beneficiaries of Defendant's Public Works Contracts.

52.     Upon information and belief, in furtherance of the Public Works Contracts entered into by Defendant, Plaintiff and other members of the putative Class and Subclass

11

performed various flagging tasks on or about the construction site, including, but not limited to, holding stop/go signs, directing pedestrian and vehicular traffic to stop or go around construction sites, directing construction vehicles in and out of the construction zones, positioning barrels and cones in and around the construction site, sweeping the construction site, putting up and taking down caution tape, and walking behind the construction vehicles as they move from one construction site to another.

53. Upon information and belief, the work performed pursuant to the Public Works Contracts required a DOT street opening permit, which requires that all employees working on the project be paid prevailing wages pursuant to NYLL § 220.

54. Upon information and belief, Plaintiff and class members should have been paid at the prevailing rate of wages (including supplemental benefits) of:

    a.    July 1, 2014 through June 30, 2015: $40.32 plus $35.15 in supplemental benefits per hour[1];

    b.    July 1, 2015 through June 30, 2016: $40.98 plus $36.92 in supplemental benefits per hour;

    c.    July 1, 2016 through June 30, 2017: $41.48 plus $38.95 in supplemental benefits per hour;

    d.    July 1, 2017 through June 30, 2018: $41.98 plus $40.98 in supplemental benefits per hour;

    e.    July 1, 2018 through June 30, 2019: $42.48 plus $43.01 in supplemental benefits per hour;

    f.    July 1, 2019 through June 30, 2020: $42.98 plus $44.86 in supplemental benefits

---

[1] The rates listed are those of a "Paver & Roadbuilder – Laborer" from the Office of the Comptroller, City of New York's § 220 Prevailing Wage Schedules.

per hour.

## Plaintiff's Work for Defendant

55.     Plaintiff Gordon worked for Defendant as a flagger on New York City roadways from in or around the winter of 2017/2018 to present[2] (the "Gordon Employment Period").

56.     Throughout the Gordon Employment Period, Gordon worked approximately fifty (50) hours in a week.

57.     Gordon was paid at straight-time rates for all hours worked, even those hours in excess of forty (40) in a week.

58.     Gordon's wage statements reflect SLGs payment of straight-time for all hours worked, including those worked in excess of forty (40) in a week.

59.     SLG would often fail to pay Gordon for all hours worked on her paychecks. When Gordon would complain, SLG would say they would pay her on the next check. Regardless of when she was paid, SLG paid Gordon at straight-time rates for all hours worked.

60.     Gordon's job duties included remaining on or about the construction site, holding stop/go signs, directing pedestrian and vehicular traffic to stop or walk/drive around construction sites, directing construction vehicles in and out of the construction zones, positioning barrels and cones in and around the construction site, positioning caution tape in and around the construction site, sweeping the construction site, and walking behind the construction vehicles as they move from one construction site to another.

61.     For her work, Gordon was paid fourteen to eighteen dollars ($14.00-$18.00) per hour throughout her employment with Defendant without any supplemental benefits even though

---

[2] While technically still employed, SLG has not given Gordon work since in or around March 3, 2019 because she is a woman, refuses to call the Superintendent "Jeff" at 3 o'clock in the morning and refuses to go out with the Superintendent in order to get work. Gordon has complained multiple times about his, including sending a letter to the owner of SLG, but has not been given work by SLG.

she was working pursuant to Public Works Contracts.

62.    Gordon worked on projects located at 130 William Street in Manhattan, IS192, 260 Livingston, Amsterdam Street, Park Terrace, across the street from Bryant Park, and a school in Manhattan which name she cannot recall.

63.    Plaintiff and the Class Members were required to wear safety gear including working boots, reflective vest, hard-hat, gloves, and goggles when working as a flagger for Defendant.

64.    Gordon had several Occupational Safety and Health Administration ("OSHA") certifications prior to beginning to work with SLG, including a ten (10) hour OSHA certification, a flagger certification, a thirty (30) hour OSHA certification, hoist/elevator operation certification, leadership certification, direction certification, OSHA foundation for leadership certification and New York State Department of State for Construction Security certification.

65.    Men who worked as construction flaggers for SLG and performed the same job duties as Gordon and other women would be paid at a higher rate from their date of hire, even when they were less qualified and possessed fewer certifications than Gordon.

66.    Gordon is aware than men who were hired as flaggers would be paid between twenty and twenty-five dollars ($20.00-$25.00) per hour, yet they only possessed a ten (10) hour OSHA certification.

67.    Gordon complained to her supervisor/superintendent Jeff "Doe" ("Jeff") and individuals that work at the Defendant's office about being paid less than men for the same work, even when she is more qualified. In response, Jeff told her that he would "take care of her" and that she was "a lady" and "people respect her."

68.    Jeff is in charge of scheduling flaggers to work each week.

14

69.     In setting the schedule, Jeff favors men and conditions work for Gordon and other women flaggers on whether they were willing to call him in the middle of the night (i.e., 3 o'clock in the morning (3:00 a.m.)) or go out with him over the weekend.

70.     For example, on March 3, 2019, Gordon finished work on the Park Terrace job and asked Jeff when she would be put on another job. In response, Jeff asked Gordon to call him at three o'clock in the morning (3:00 am). Gordon responded that she would call him during work hours. In response, Jeff told Gordon that he "could not wait to fire her."

71.     Furthermore, when Gordon asked Jeff about whether there would be work for her the following week, Jeff responded by asking Gordon what she is doing that weekend. When Gordon told Jeff that she was not interested in going out with him, he said he did not know if there is any work for her available.

72.     Moreover, Jeff typically called men to work first, but if the man called out at the last minute, Jeff called Gordon or other women to come to work at the last minute.

73.     Gordon continued to follow up with Jeff to ask about being put on jobs for SLG; however, Jeff tells her that SLG is "slow." Gordon knows this is not true because she has several male friends who have applied for and been given flagging jobs with SLG since March of 2019.

74.     Gordon left phone messages with the owner of SLG in April and May of 2019 requesting to be put on a job and wrote a letter to the owner requesting the same, but has still not been placed on a job.

75.     At no point during their employment did Plaintiff or the Class Members receive a wage notice showing their hourly and/or overtime rate(s), or other information required by NYLL § 195.

76.     Plaintiff and the Class Members' wage statements were improper when they

worked in excess of forty (40) hours in a week as the wage statements would show that they were paid at straight-time rates for all hours, rather than the overtime premium rate of one and one-half (1.5) times their regular rate, which they should have been paid for hours over 40.

77.     Defendant's failure to pay Plaintiff proper overtime for hours worked in excess of forty (40) in a week, failure to pay the prevailing wage and supplemental benefits for work performed on public works projects, failure to provide proper wage statements and failure to provide wage notices were corporate policies of Defendant which applied to all of Defendant's flaggers throughout the relevant time period.

78.     Defendant's failure to pay women performing the same work as men an equal rate of pay applied to all of Defendant's female workers throughout the relevant time period.

**FIRST CAUSE OF ACTION**
**FAIR LABOR STANDARDS ACT – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Unpaid Overtime Collective Action Members)**

79.     Plaintiff, on behalf of herself and the Unpaid Overtime Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

80.     Defendant violated the FLSA overtime rights of Plaintiff and the Unpaid Overtime Collective Action Members when they performed non-exempt duties and failing to pay overtime premiums of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

81.     By failing to pay overtime at a rate not less than one and one-half (1.5) times the regular rate of pay for work performed in excess of 40 hours per week, Defendant has violated and continue to violate the FLSA, 29 U.S.C. §§ 201 *et seq.*, including 29 U.S.C. §§ 207(a)(1) and 215(a)(2).

82. The foregoing conduct, as alleged, constitutes a willful violation of the FLSA within the meaning of 29 U.S.C. § 255(a).

83. Defendant's failure to pay overtime caused Plaintiff and the Unpaid Overtime Collective Action Members to suffer loss of wages and interest thereon. Plaintiff and the Unpaid Overtime Collective Action Members are entitled to recover from Defendant their unpaid overtime premium compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 216(b).

## SECOND CAUSE OF ACTION
## EQUAL PAY ACT
### (Brought on Behalf of Plaintiff and the Equal Pay Collective Action Members)

84. Plaintiff, on behalf of herself and the Equal Pay Collective Action Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

85. At all relevant times herein, Plaintiff was an employee protected by the Equal Pay Act, 29 U.S.C. § 206 *et seq.*

86. During Plaintiff's and the Equal Pay Collective Action Members' employment, Defendant SLG required Plaintiff and Equal Pay Collective Action Members to perform the same and/or substantially the same work as Defendant's male employees, requiring equal skill, effort and responsibility under similar working conditions and paid Plaintiff and Equal Pay Collective Action Members at rates less than such male counterparts.

87. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than sex.

88.     Defendant SLG is engaged in policies and practices of employment which willfully, and in the alternative, unwilfully, discriminated against Plaintiff and the Equal Pay Collective Action Members on the basis of sex by paying Plaintiff and Equal Pay Collective Action Members a lesser rate of pay than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions.

89.     All of the above acts of the Defendant violate 29 U.S.C. § 206 *et seq.*

90.     Plaintiff and Equal Pay Collective Action Members have no plain, adequate, or complete remedy at law to correct Defendant's employment practices. The injunctive and other relief they seek is their only means of securing full relief from those practices. Plaintiff and Equal Pay Collective Action Members are now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

91.     As a direct and proximate result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff and the Equal Pay Collective Action Members have suffered loss of wages and interest thereon. Plaintiff and the Equal Pay Collective Action Members are entitled to recover from Defendant equal compensation as their male counterparts, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to 29 U.S.C. § 206 *et seq.*

**THIRD CAUSE OF ACTION**
**NEW YORK LABOR LAW – UNPAID OVERTIME**
**(Brought on Behalf of Plaintiff and the Class Members)**

92. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

93. Defendant violated the NYLL overtime rights of the Plaintiff and the Class Members by failing to pay overtime premiums consisting of one and one-half (1.5) times employees' regular hourly rates for all hours worked in excess of forty (40) hours per week.

94. Defendant willfully violated Plaintiff's and the Class Members' rights by failing to pay overtime compensation at a rate of not less than one and one-half times the regular rate of pay for hours worked in excess of 40 each week, in violation of the NYLL and regulations promulgated thereunder.

95. Defendant's failure to pay overtime premium compensation caused Plaintiff and the Class Members to suffer loss of wages and interest thereon. Plaintiff and the Class Members are entitled to recover from Defendant their unpaid overtime compensation, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NYLL §§ 663(1) *et seq.*

**FOURTH CAUSE OF ACTION**
**BREACH OF CONTRACT**
**(Brought on Behalf of Plaintiff and the Class Members)**

96. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

97. Upon information and belief, the Public Works Contracts entered into by Defendant contained schedules of the prevailing rates of wages and supplemental benefits or reference to the NYLL provisions governing payment of prevailing wages to be paid to Plaintiff

and the employees performing work pursuant to such contracts.

98.     Those prevailing rates of wages and supplemental benefits were made part of the Public Works Contracts for the benefit of the Plaintiff and the other employees performing work pursuant to such contracts. In the event that the contracts or agreements entered into failed to explicitly contain prevailing wage schedules, the prevailing wage requirements were supplemented as a matter of law, requiring Defendant to pay the Plaintiff and Class Members prevailing wages, daily/weekly overtime and supplemental benefits for all work performed.

99.     Defendant's failure to pay Plaintiff and the Class Members at the correct prevailing wage rates for straight time, overtime, and supplemental benefits for work performed on public works projects constituted a material breach of the contracts entered into directly or indirectly between Defendants and certain public entities.

100.    As a result of Defendant's failure to pay Plaintiff and the Class Members at prevailing wage rates, they are entitled to relief from Defendant for breach of contract under New York common law of contracts.

### FIFTH CAUSE OF ACTION
### UNJUST ENRICHMENT & QUANTUM MERUIT
**(Pled In The Alternative)**
**(Brought on Behalf of Plaintiff and the Class Members)**

101.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

102.    Based on Defendant's failure to pay Plaintiff and the Class Members the appropriate prevailing wage rates, Defendant was unjustly enriched at the expense of Plaintiff and the Class Members.

103.    Equity and good conscience require that Defendant pay restitution to Plaintiff and

20

the Class Members.

104. Upon information and belief, when Defendant entered into the contract, it agreed to pay the required prevailing wages, overtime, shift-differential and holiday premiums, and supplemental benefit rates of pay to Plaintiff and other employees who performed work pursuant to the contracts.

105. Plaintiff and the Class Members provided valuable services to Defendant performing prevailing wage jobs for which Plaintiff and the Class Members expected compensation. Defendant knowingly accepted such services yet failed to pay Plaintiff and the Class Members the reasonable value of such services as defined by the New York State and New York City prevailing wage schedules.

106. As a result of Defendant's failure to pay Plaintiff and the Class Members at prevailing wage rates on prevailing wage jobs and Defendant's corresponding unjust enrichment, Plaintiff and the Class Members are entitled to relief from Defendant under New York's common law of unjust enrichment.

107. As a result of Defendant's failure to pay Plaintiff and the Class Members the reasonable value of the valuable services they rendered, Plaintiff and the Class Members are entitled to relief from Defendant under New York's common law of quantum meruit.

**SIXTH CAUSE OF ACTION**
**NEW YORK LABOR LAW – WAGE STATEMENT VIOLATIONS**
**(Brought on Behalf of Plaintiff and the Class Members)**

108. Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

109. Defendant has willfully failed to supply Plaintiff and the Class Members a proper

wage statement as required by Article 6, § 195(3).

110.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant two hundred fifty dollars ($250) per employee for each work day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL §§ 198(1-d) liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

**SEVENTH CAUSE OF ACTION**
**NEW YORK LABOR LAW –WAGE NOTICE VIOLATIONS**
**(Brought on Behalf of Plaintiff and the Class Members)**

111.    Plaintiff, on behalf of herself and the Class Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

112.    Defendant has willfully failed to supply Plaintiff and the Class Members notice as required by Article 6, § 195, on the date of hire and February 1 of each year, in English or in the language identified by Plaintiff and the Class Members as their primary language, containing Plaintiff's and Class Members' rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other; hourly rate or rates of pay and overtime rate or rates of pay if applicable; the regular pay day designated by the employer in accordance with NYLL, Article 6, § 191; the name of the employer; or any "doing business as" names used by the employer; the physical address of the employer's main office or principal place of business, and a mailing address if different; the telephone number of the employer; plus such other information as the commissioner deems material and necessary.

113.    Due to Defendant's violations of the NYLL, Plaintiff and the Class Members are entitled to recover from Defendant fifty dollars ($50) per employee for each work day that the violations occurred or continue to occur, or a total of five thousand dollars ($5,000) per employee, as provided for by NYLL, Article 6, § 198(1-b), liquidated damages as provided for by the NYLL, reasonable attorneys' fees, costs, pre-judgment and post-judgment interest, and injunctive and declaratory relief.

### EIGHTH CAUSE OF ACTION
### NEW YORK STATE HUMAN RIGHTS LAW- SEX-BASED DISCRIMINATION
#### (Brought on Behalf of Plaintiff and the Subclass Members)

114.    Plaintiff, on behalf of herself and the Subclass Members, repeats and realleges each and every allegation of the preceding paragraphs hereof with the same force and effect as though fully set forth herein.

115.    The aforesaid conduct of Defendant constitutes willful sex-based discrimination against Plaintiff in violation of the New York State Human Rights Law, N.Y. Executive Law § 290, *et seq.*

116.    Defendant is an employer within the meaning of the NYSHRL.

117.    Plaintiff is a member of a protected class. The harassment and disparate treatment and pay were directed against Plaintiff and Subclass Members because they are woman.

118.    Defendant would give preferential treatment with regard to giving more work shifts to men over Plaintiff and Subclass Members (women) and would condition giving work to Plaintiff and Subclass Members on whether they called Defendant's Superintendent Jeff in the middle of the night or go out with him over the weekend.

119.    Moreover, Defendant paid Plaintiff and Subclass members lower rates than men for performance of the same work in substantially similar conditions throughout their

23

employment despite Plaintiff and the Subclass Members being equally or more qualified than their male counterparts.

120. Plaintiff complained about this sexual discrimination to Defendant multiple times, but it continued.

121. The foregoing acts and/or omissions by Defendant violated the NYSHRL which prohibits sexual discrimination in employment. Defendant's conduct was willful, constituted gross negligence and was intended to bring about the harm to Plaintiff and Subclass Members.

122. As a result of the unlawful discrimination by Defendant, Plaintiff and Subclass Members have suffered substantial money damages, including, but not limited to, loss of wages, loss of future earnings, and appreciation thereon.

123. In addition, as a result of the willful and unlawful discrimination by Defendant, Plaintiff and Subclass Members have suffered humiliation and mental anguish, psychological, physical and emotional damages and damage to their professional reputation.

124. As a result of the foregoing actions by Defendant, Plaintiff and Subclass Members have been damaged to their person, property and employment.

125. As a result of the foregoing, Plaintiff and Subclass Members are entitled to backpay with interest and compensatory damages, in an amount to be proven at trial.

**NINTH CAUSE OF ACTION**
**NEW YORK CITY HUMAN RIGHTS LAW – GENDER-BASED DISCRIMINATION**
**(Brought on Behalf of Plaintiff and the Subclass Members)**

126. Plaintiff, on behalf of herself and the Subclass Members, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

127. The aforesaid conduct of Defendant constitutes willful gender-based discrimination against Plaintiff and Subclass Members in violation of the New York City Human Rights Law, N.Y.C. Admin. Code § 8-107, *et seq.*

128. Defendant is an employer within the meaning of the NYCHRL.

129. Plaintiff and Subclass Members are members of a protected class (women). The harassment and disparate treatment and pay were directed against Plaintiff and Subclass Members because they are a woman.

130. Defendant engaged in sexual harassment against Plaintiff and Subclass Members.

131. Defendant's conduct created a hostile work environment which was so severe as to alter the conditions of Plaintiff and Subclass Members' employment.

132. Defendant would give preferential treatment in terms of scheduling to men and would condition giving work to Plaintiff and Subclass Members (women) on whether they called him in the middle of the night or go out with him over the weekend.

133. Moreover, Defendant paid Plaintiff and Subclass members lower rates than men performing the same work in substantially the same circumstances throughout their employment despite Plaintiff and the Subclass Members being equally or more qualified to perform the same work as their male counterparts.

134. Plaintiff complained about this sexual discrimination to Defendant multiple times, but it continued.

135. The foregoing acts and/or omissions by the Defendant violated the NYCHRL which prohibit sexual discrimination in employment. Defendant's conduct was willful, constituted gross negligence and was intended to bring about the harm to the Plaintiff and Subclass Members.

136. As a result of the unlawful discrimination by Defendant, Plaintiff has suffered substantial money damages, including, but not limited to, loss of wages, loss of future earnings and appreciation thereon.

137. In addition, as a result of the willful and unlawful discrimination by Defendant, Plaintiff has suffered severe humiliation and mental anguish, psychological, physical and emotional damages and damages to her professional reputation.

138. As a result of the foregoing actions by the Defendant, Plaintiff has been damaged to her person, property and employment.

139. As a result of the foregoing, Plaintiff is entitled to backpay with interest and compensatory damages, in an amount to be proved at trial.

## TENTH CAUSE OF ACTION
## NEW YORK EQUAL PAY ACT
### (Brought on Behalf of Plaintiff and the Subclass Members)

140. Plaintiff, on behalf of herself and the Subclass Members, repeats, realleges and incorporates by reference the foregoing allegations as if set forth fully and again herein.

141. At all relevant times herein, Defendant was Plaintiff's employer subject to the NY EPA.

142. During Plaintiff's and the Subclass Members' employment, Defendant SLG required Plaintiff and the Subclass Members to perform the same and/or substantially the same work as Defendant's male employees, requiring equal skill, effort and responsibility under similar working conditions and paid Plaintiff and Subclass Members at rates less than such male counterparts.

143. The differential rate of pay was not part of or occasioned by a seniority system, merit system, a system based on the quantity or quality of production or upon a factor other than sex.

144. Defendant SLG is engaged in policies and practices of employment which willfully, and in the alternative, unwilfully, discriminated against Plaintiff and the Subclass Members on the basis of sex by paying Plaintiff and Subclass Members a lesser rate of pay than that paid to male employees performing the same or substantially similar job duties which require equal skill, effort, and responsibility, and under the same working conditions.

145. All of the above acts of the Defendant violate the NY EPA

146. Plaintiff and Subclass Members have no plain, adequate, or complete remedy at law to correct Defendant's employment practices. The injunctive and other relief they seek is their only means of securing full relief from those practices. Plaintiff and Subclass Members are now suffering and will continue to suffer irreparable injury from these unlawful employment practices.

147. As a direct and proximate result of Defendant's wrongful acts, conduct, and omissions, including but not limited to those described above, Plaintiff and the Subclass Members have suffered loss of wages and interest thereon. Plaintiff and the Subclass Members are entitled to recover from Defendant equal compensation as their male counterparts, damages for unreasonably delayed payment of wages, liquidated damages, reasonable attorneys' fees, and costs and disbursements of the action pursuant to NY EPA.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiff, on behalf of herself and all other similarly situated Unpaid Overtime Collective Action Members, Equal Pay Collective Action Members, Class Members and Subclass Members, respectfully requests that this Court grant the following relief:

a.   Designation of this action as a collective action on behalf of the Unpaid Overtime and Equal Pay Collective Action Members and ordering the prompt issuance of notice pursuant to 29 U.S.C. § 216(b) to all similarly situated members of an FLSA/EPA Opt-In Class, apprising them of the pendency of this action, permitting them to assert timely FLSA/EPA claims in this action by filing individual Consents to Sue pursuant to 29 U.S.C. § 216(b) and appointing Plaintiff and her counsel to represent the Unpaid Overtime and Equal Pay Collective Action Members;

b.   Certification of this action as a class action pursuant to Fed. R. Civ. P. 23(b)(2) and (3) on behalf of the Class and Subclass, appointing Plaintiff and her counsel to represent the Class and Subclass and ordering appropriate monetary, equitable and injunctive relief to remedy Defendant's violation of the common law and New York State law;

c.   An order tolling the statute of limitations;

d.   A declaratory judgment that the practices complained of herein are unlawful under the FLSA, EPA, NYLL, New York Common Law, NYSHRL and NYCHRL;

e.   An injunction against Defendant and its officers, agents, successors, employees, representatives and any and all persons acting in concert with Defendant, as

provided by law, from engaging in each of the unlawful practices, policies and patterns set forth herein;

f.  An award of compensatory damages as a result of Defendant's failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

g.  An award of liquidated and/or punitive damages as a result of the Defendant's willful failure to pay overtime compensation pursuant to the FLSA and the NYLL and supporting regulations;

h.  An award of two hundred fifty dollars ($250.00) per Plaintiff and each of the Class Members for each work day that the violations of NYLL, Article 6 § 195(3), pertaining to distribution of wage statements, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-d);

i.  An award of fifty dollars ($50.00) per Plaintiff and each of the Class Members for each work day that the violations of NYLL, Article 6 § 195(1), pertaining to distribution of wage notice, occurred or continue to occur, or a total of five thousand dollars ($5,000.00) per Plaintiff and each of the Class Members as provided for by NYLL, Article 6 § 198(1-b);

j.  An award of monetary damages to be proven at trial for all unpaid prevailing wages, daily/weekly overtime and supplemental benefits owed to Plaintiff and the Class Members;

k.  An award of compensatory damages to Plaintiff and the Subclass Members in an amount to be shown at trial for past and future economic and non-economic

29

losses, including lost wages, future lost wages, pain and suffering, emotional distress and mental anguish;

l.    An award for exemplary and/or punitive damages in an amount to be shown at trial as a result of Defendants' willful and malicious discriminatory and illegal conduct;

m.    An award of prejudgment and post-judgment interest;

n.    An award of costs and expenses of this action together with reasonable attorneys' and expert fees; and

o.    Such other and further relief as this Court deems just and proper.

## DEMAND FOR TRIAL BY JURY

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all questions of fact raised by the complaint.

Dated: New York, New York
5/21/2020

Respectfully submitted,

**PELTON GRAHAM LLC**

By: _____

Brent E. Pelton (BP 1055)
Taylor B. Graham (TG 9607)
Alison L. Mangiatordi (AL 1020)
111 Broadway, Suite 1503
New York, New York 10006
Telephone: (212) 385-9700
Facsimile: (212) 385-0800

*Attorneys for Plaintiff, the putative FLSA and EPA Collectives and Classes*

DocuSign Envelope ID: D5ED5EF0-92BD-4AFF-9194-ABCAB6986C27

# CONSENT TO BECOME PARTY PLAINTIFF

By my signature below, I hereby authorize the filing and prosecution of claims in my name and on my behalf to contest the failure of Spacious Living Group, and/or their respective owners, affiliated companies, subsidiaries, contractors, directors, officers, franchisees and/or affiliates to pay me prevailing wages and overtime wages as required under state and/or federal law, and also authorize the filing of this consent in the action(s) challenging such conduct. I authorize being **named as the representative plaintiff** in this action to make decisions on behalf of all other plaintiffs concerning the litigation, the method and manner of conducting this litigation, the entering of an agreement with Plaintiff's counsel concerning attorneys' fees and costs, and all other matters pertaining to this lawsuit. I understand that I will be represented by Pelton Graham LLC without prepayment of costs or attorneys' fees. I understand that if plaintiffs are successful, costs expended by attorneys on my behalf will be deducted from my settlement or judgment first. I understand that my attorneys may petition the court for an award of fees and costs to be paid by defendants on my behalf. I understand that the fees retained by the attorneys will be either the amount received from the defendants or approximately 1/3 (33.33%) of my total settlement or judgment amount (including fees), whichever is greater.

DocuSigned by:

April Gordon
_____
Signature

April Gordon
_____
Printed Name