

# PELTON GRAHAM LLC
## ADVOCATES FOR JUSTICE

Brent E. Pelton, Esq.
Pelton@PeltonGraham.com

December 11, 2020

**VIA ECF**

Honorable Laura Taylor Swain
Daniel Patrick Moynihan
United States Courthouse
500 Pearl Street
New York, New York 10007

   **Re:** *April Gordon v. Spacious Living Group LLC d/b/a SLG Construction,*
     <u>Civil Action No. 20 Civ. 3956 (LTS)(GWG)</u>

Dear Judge Swain:

  This office represents named plaintiff April Gordon ("Gordon" or "Named Plaintiff") and retained putative plaintiff Makiba Darby ("Darby" and, together with Gordon, the "Plaintiffs") with regard to their claims against Defendant Spacious Living Group LLC d/b/a SLG Construction ("SLG" or "Defendant," and, together with Plaintiffs, the "Parties") in the above-referenced matter and a related Equal Employment Opportunity Commission ("EEOC") charge on behalf of Gordon. This letter is submitted jointly with Gregg H. Salka, counsel for Defendant, pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.* (FLSA), the Second Circuit's decision in *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015) and Your Honor's December 1, 2020 Order. (Dkt. No. 16). Counsel for the Parties respectfully submit that the attached negotiated Settlement Agreement (Exhibit A) constitutes a fair and reasonable compromise of this matter which should be approved by the Court.

**I.**  **Introduction and Procedural History**

  The Named Plaintiff commenced this action by filing a Collective and Class Action Complaint (Dkt. No. 1, the "Complaint") on behalf of herself and all similarly situated employees of Defendant on May 21, 2020 seeking *inter alia*, alleged unpaid overtime premiums pursuant to the FLSA and the New York Labor Law ("NYLL") § 650 *et seq.*, alleged damages for wage notice and wage statement violations pursuant to the NYLL, alleged unpaid prevailing wages, daily overtime and supplemental benefits for work performed on public works projects sought pursuant to breach of contract claims under the common law of New York, alleged damages for discrimination on the basis of sex in violation of the Equal Pay Act of 1963 ("EPA"), 29 U.S.C. § 206(d), the New York Equal Pay Act ("NY EPA"), NYLL § 194 *et seq.*, New York Human Rights Law ("NYHRL"), Executive Law § 290 *et seq.* and the Administrative Code of the City of New York ("NYCHRL"), § 8-107 *et seq*. (*See generally* Dkt. No. 1). Gordon simultaneously filed a charge with the EEOC for her alleged claims for discrimination on the basis of sex under Title VII. Darby signed a retainer with Plaintiffs' counsel on September 8, 2020. Had the case not settled,

**New York**: 111 Broadway, Suite 1503, New York, NY 10006 Tel. 212-385-9700 Fax 212-385-0800
**San Francisco**: 456 Montgomery Street, 18th Fl., San Francisco, CA 94104 Tel. 415-437-9100 Fax 212-385-0800

www.PeltonGraham.com

Plaintiffs intended on filing an Amended Complaint adding Darby as a named plaintiff in this matter with all of the same claims as Gordon and also filing an EEOC Charge on behalf of Darby.

The Parties agreed to extend Defendant's time to respond to the Complaint in order to exchange documents and have meaningful settlement negotiations. In order to facilitate settlement, Plaintiffs and Defendant exchanged a meaningful number of time and pay records, text messages and letters, and Plaintiffs sent Defendant a damages analysis and initial settlement demand. Defendant sent a detailed analysis disputing Plaintiffs' claims. Plaintiffs' counsel and Defendant's counsel engaged in numerous discussions regarding the strengths and weaknesses of the Parties' claims/defenses over the phone and by email. Ultimately, the Parties agreed on a settlement as further outlined in the Settlement Agreement.

II. **The Settlement Accounts for Litigation Risk and Compensates Plaintiffs for Alleged Substantial Damages**

Throughout this litigation, the Parties have held significantly different viewpoints on the underlying facts of this matter and Defendant's potential liability. Plaintiffs allege that although they frequently worked well in excess of forty (40) hours in a week, they were not paid overtime premiums of one and one-half (1.5) times their regular hourly rate for hours worked over forty (40) in a given workweek. Furthermore, Plaintiffs allege that although they typically worked providing flagger services on public works projects on city streets, they were not paid the proper prevailing rate of wages, daily overtime or supplemental benefits. Plaintiffs allege that because they are women they were routinely paid less than men performing the same work with equal or fewer certifications than they had. Moreover, Plaintiffs alleged various instances of sexual harassment from men who worked for Defendant, especially those in supervisory roles. Finally, Plaintiffs alleged that they were not provided with a proper wage notice or wage statements as is required by the NYLL. Defendant has vigorously denied Plaintiffs' allegations, including their dates of employment, positions held, alleged lack of documents (denying that they did not receive proper wage notices or wage statements), claims for unpaid overtime (alleging that they were paid for all overtime at time and a half), prevailing wages (denying that they worked on public works projects), and discrimination on the basis of sex (denying that men were paid more than women), and denying any misconduct or sexual harassment of any kind from Defendant or any of its employees. Defendant also asserts a myriad of other factual/legal defenses to Plaintiffs' alleged claims.

Due to the fact-intensive nature of the Plaintiffs' unpaid wages and discrimination claims, it is likely that substantive answers to these disputed issues would not be resolved until after significant discovery and motion practice, if not a trial. Based on these disputes the Parties engaged in good-faith, arms-length settlement negotiations, regarding not only Plaintiffs' FLSA claims, but also their pendant state law claims and discrimination claims.

As set forth above, Plaintiffs created a damages analysis utilizing Defendant's records to the extent provided as well as alleged off-the-clock hours and additional damages for their discrimination claims. This analysis resulted in approximately $14,575.75 in unpaid overtime (including off the clock hours) and $18,542.00 in discrimination unpaid wage damages. It includes

an additional $30,000 in emotional distress damages and $15,000 in wage notice/wage statement damages[1]. Thus, the settlement amount (i.e., $62,500.00) represents all of Plaintiffs' alleged unpaid overtime damages (not including liquidated damages, interest and penalties) plus a significant portion of their alleged discrimination unpaid wage, emotional distress and statutory damages. The settlement therefore represents a substantial portion of Plaintiffs' alleged damages, which would be the anticipated recovery if Plaintiffs received a favorable outcome at trial under both federal and state law. While it does not compensate Plaintiffs for their alleged liquidated damages, penalties, prevailing wage and all of their attorneys' fees in addition to the damages, the Parties believe this is a fair recovery based on the risks associated with establishing liability on all claims and obtaining a judgment for the full calculated damages.

### III.     Settlement Terms

As set forth in the attached Settlement Agreement, the Parties have agreed to settle this action for a total settlement amount of $62,500.00 (the "Settlement Amount"). Of that amount, $21,305.67 is payable to Plaintiffs' counsel, including $708.51 in expenses for counsel's costs for filing and service of the Complaint, plus attorneys' fees in the amount of one-third (33.33%) of the Settlement Amount, after subtracting those expenses (i.e. $20,597.16). The remaining $41,194.33 is payable directly to Plaintiffs (the "Net Settlement Amount").

The Parties have agreed to a mutual general release of claims. Plaintiffs are not aware of any claims against Defendant other than those already asserted in this Action and the EEOC Charge and similar claims for Darby, and neither of the Plaintiffs continue to be employed by Defendant. However, in order to maximize the Settlement Amount and to permit Defendant to calculate their financial exposure with a degree of certainty, a mutual general release has been deemed a necessary fixture of this Settlement Agreement.

The Second Circuit in *Cheeks* questioned the propriety of an FLSA settlement agreement in another case that included: (1) "a battery of highly restrictive confidentiality provisions" (2) an overbroad release that would waive both current and future claims and (3) a fee for plaintiffs' attorneys of "between 40 and 43.6 percent . . . without adequate documentation to support such a fee award." The Settlement Agreement before Your Honor, however, (1) does not contain a highly restrictive confidentiality provision; (2) does not contain a release which is one-sided and does not apply to future claims; and (3) the Plaintiffs' attorneys' fees are standard. Most importantly, and unlike the settlement agreement at issue in *Cheeks,* the Settlement Agreement is available to Your Honor to explore and to assess whether it was likely the "fair result of a balanced negotiation, in which Plaintiffs were represented by able counsel."[2]

---

[1] For the purpose of settlement at this stage, Plaintiffs did not include breach of contract / unpaid prevailing wage damages in their damages analysis.
[2] *Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016).

Indeed, since *Cheeks,* judges in both the Eastern and Southern Districts of New York have approved FLSA settlements containing general releases after such a review.[3] As one judge explained: "[P]arties come to a settlement conference in a wage-and-hour case hoping to achieve a resolution of all claims, including any other claims that they may have against each other (whether pled or unpled in the complaint or in any counterclaims) so that they do not have to litigate against each other in the future. A general release of the kind proposed in this case, with former employees who have no ongoing relationship with the employer, makes sense in order to bring complete closure . . . A mutual release will ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes."[4]

In addition, as the general release is mutual, Plaintiffs are similarly insulated from any subsequent litigation by Defendant. This mutual release demonstrates that Defendant is not leveraging "a release from liability unconnected to the FLSA," *Moreno v. Regions Bank,* 729 F.Supp.2d 1346, 1350-52 (M.D. Fla. 2010), because any claim that Defendant has against Plaintiffs would also be released. As alluded to above, numerous cases have held that a mutual general release is acceptable in a matter such as this, namely in a non-class/collective action FLSA matter where other claims may exist. *See e.g. Souza v 65 St. Marks Bistro*, 15-CV-327 (JLC), 2015 WL 7271747, at *5 (S.D.N.Y. Nov. 6, 2015) (approving of mutual General Release in a single Plaintiff FLSA matter as such releases "ensure that both the employees and the employer are walking away from their relationship up to that point in time without the potential for any further disputes"); *Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *9 (S.D.N.Y. July 10, 2016) (approving a general mutual release as fair and reasonable).

Keeping in line with the trend in this Circuit following *Cheeks*, the Parties only included a limited confidentiality provision which specifically permits the Parties to discuss the unpaid wages claims and settlement of such claims and acknowledged that the agreement is being filed on the public docket herewith. *See Sugranes v. BYA Corp. D/b/a The Lobstr Box, et al.*, 15 Civ. 1115 (LTS)(AJP)(Dkt. No. 19) (requiring settlement agreement with confidentiality provision to be filed on the public docket and approving such settlement).

Furthermore, the Parties recognize that Courts have held that broad one-sided non-disparagement provisions "can be contrary to public policy because they prevent the spread of information about FLSA actions to other workers (both employees of Defendants and others), who can then use that information to vindicate their statutory rights." *Gaspar v. Pers. Touch Moving, Inc.*, No. 13 Civ. 8187 (AJN), 2015 U.S. Dist. LEXIS 162243, *3 (S.D.N.Y. Dec. 3, 2015). However, not every non-disparagement clause in an FLSA settlement is *per se* objectionable. *See Lopez v. Nights of Cabiria LLC*, 96 F. Supp. 3d 170, 180 n.65 (S.D.N.Y. 2015). Here, the non-disparagement clause contained in this agreement is permissible for two reasons:

---

[3] *See, e.g,, Lola v. Skadden,* No. 13-cv-5008 (RJS), 2016 U.S. Dist. LEXIS 12871, at *4 (S.D.N.Y. Feb. 3, 2016); *Plizga v. Little Pol. Rest. Inc.,* 2016 U.S. Dist. LEXIS 94859 (S.D.N.Y. July 18, 2016); *Man Wai Shiu v. Aluk*, 888, Inc., 2016 U.S. Dist. LEXIS 55068 (E.D.N.Y. April 21, 2016); *Katsanos v. 153 Woodcleft Corp.,* 2016 U.S. Dist. LEXIS 79292 (E.D.N.Y. June 17, 2016).
[4] *Souza v. 65 St. Marks Bistro,* 2015 U.S. Dist. LEXIS 151144, at *18-19 (S.D.N.Y. Nov. 6, 2015).

    1) Initially, the non-disparagement provision is mutual and binds Plaintiffs and Defendant. Following *Cheeks*, several Courts have approved settlements containing mutual non-disparagement clauses. *See Sadana v. Park Li, Ltd.,* No. 15-CV-8772, 2015 U.S. Dist. LEXIS 19122, at *2-3 (S.D.N.Y. Feb. 17, 2016) (approving the inclusion of a mutual non-disparagement clause in an FLSA settlement agreement). The mutual aspect of the non-disparagement provision benefits Plaintiffs particularly as it requires Defendant to only provide the last position held by Plaintiffs in the event that they receive a request for information from Plaintiffs' employers or prospective employers seeking verification of employment.

    2) Moreover, in recognition of the public policy interest favoring the disclosure of information relating to this action, the non-disparagement clause contains a "carve-out" provision permitting Plaintiffs to make truthful statements. Courts have held that such a "carve-out" provision provides an equitable balance between Plaintiffs' rights under the FLSA, and Defendant's interest in preventing the dissemination of defamatory statements. *See Cionca v. Interactive Realty LLC*, No. 15-CV-05123 (BCM), 2016 U.S. Dist. LEXIS 77372 at *8 (S.D.N.Y. July 10, 2016) (a clause which bars a plaintiff from making negative statements about a defendant "must include a carve-out for truthful statements about [a plaintiff's] experience in litigating [her] case."); *Lopez v. Poko-St. Anns L.P.,* No. 15-CV-4980 (BCM), 2016 U.S. Dist. LEXIS 46862 at fn. 1 (S.D.N.Y. April 4, 2016) (approving bilateral non-disparagement clause containing a "carve-out" provision for truthful statements); *Panganiban v. Medex Diagnostic & Treatment Ctr. LLC,* No. 15-CV-2588 (AMD)(LB), 2016 U.S. DIST LEXIS 29158 at * 6 (E.D.N.Y. Mar. 7, 2016) (approving reciprocal non-disparagement clause with a "carve out" for truthful statements about [plaintiff's] experience litigating the FLSA action); *Cortes v. New Creators, Inc*., No. 15 Civ. 5680, 2016 U.S. Dist. LEXIS 79757, *4 (S.D.N.Y. June 20, 2016) (approving non-disparagement clause that "includes the requisite 'carve-out' for truthful statements about plaintiffs' experience litigating this case").

### IV. Plaintiffs' Attorney's Fees and Expenses

As set forth in the attached Affidavit of Brent E. Pelton, Esq. (Exhibit B), as of December 11, 2020, Plaintiffs' counsel had spent more than ninety (90) hours in prosecuting and settling this matter, resulting in a lodestar of $28,622.92. Plaintiffs' counsel had spent $708.51 in actual litigation costs. The portion of the settlement amount that plaintiffs seek as attorney's fees (i.e., $20,597.16) represents one-third (1/3) of the settlement amount, after subtracting the actual litigation costs, which represents a modest 0.7 multiplier of the lodestar amount and is consistent with what was agreed upon between the Plaintiffs and their counsel in their retainer agreements. The retainer agreement between Plaintiffs and their counsel set forth a contingency fee of one-third (1/3) of any settlement, plus reimbursement of actual litigation costs.

The hourly billing rates utilized by Plaintiffs' counsel in calculating the lodestar are within the range paid to attorneys of similar experience and professional focus in the Southern District of New York. In fact, similar rates have been approved in connection with a recent wage and hour

default judgment in the Eastern District. *See Guinea v. Garrido Food Corp.*, No. 19-CV-5860 (BMC), 2020 U.S. Dist. LEXIS 5476, at *4-5 (E.D.N.Y. Jan. 11, 2020) (Providing that rates of "$350-$450 per hour for partner time, $250-$300 per hour for associate time, and $125-$175 per hour for paralegal time…are reasonable and consistent with rates allowed in this district."). Although the applicable rates are those approved in the SDNY, the prevailing rates in the EDNY are similar, if not lower than those typically approved in the SDNY. *Allende v. Unitech Design, Inc.*, 783 F. Supp. 2d 509, 514 (S.D.N.Y. 2011) (Peck, M.J.) (approving partner's $450 hourly rate as "consistent with rates awarded by the courts in other FLSA or similar statutory fee cases," citing cases); *Torres v. Gristede's Operating Corp.*, No. 04-CV-3316, 2012 U.S. Dist. LEXIS 127890, 2012 WL 3878144 at *3-4 (S.D.N.Y. Aug. 6, 2012) (awarding hourly partner rates of $500 and $550 in FLSA case and noting that "'rates awarded to experienced civil rights attorneys over the past ten years have ranged from $250 to $600, . . . with average awards increasing over time.'") (internal citations omitted). Accordingly, Plaintiffs' counsel submits that the attorney's fees component of the settlement is fair and reasonable.

For the purposes of this settlement, Defendant takes no position with respect to counsel's request for attorneys' fees.

**V.     The Parties Believe that the Settlement Is Fair and Reasonable**

A FLSA settlement should receive judicial approval where it is "fair and reasonable." *See Cheeks*, *supra*; *Wolinsky v. Scholastic, Inc*. 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012). Generally, there is a "strong presumption in favor of finding a settlement fair," as "the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Crabtree v. Volkert, Inc.*, No. 11-cv-0529, 2013 U.S. Dist. LEXIS 20543, at *8 (S.D. Ala. Feb. 14, 2013). Moreover, "[c]ourts approve FLSA settlements when they are reached as a result of contested litigation to resolve *bona fide* disputes." *In re Penthouse Executive Club Compensation Litig.*, No. 10-cv-1145, 2014 U.S. Dist. LEXIS 5864, at *22 (S.D.N.Y. Jan. 14, 2014) (noting that the inherent adversarial nature of a litigated FLSA case is adequate indicator of fairness of settlement). In considering whether a settlement is fair and reasonable, the principal question is "whether the agreement reflects a 'reasonable compromise of disputed issues [rather] than a mere waiver of statutory rights brought about by an employer's overreaching.'" *Le v. SITA Info. Networking Computing USA, Inc.*, No. 07-cv-86, 2008 U.S. Dist. LEXIS 20786 at *2 (E.D.N.Y. Mar. 13, 2008) (*quoting Lynn's Food,* 679 F.2d at 1354). Although the FLSA places "limits on an employee's ability to waive claims . . . for fear that employers would [otherwise] coerce employees into settlement and waiver," *Wolinsky*, 900 F. Supp. 2d at 335 (alteration in original) (internal quotation marks omitted), "these concerns are not as relevant when the plaintiffs no longer work for the defendant, as is the case here." *Cisneros v. Schnipper Restaurant LLC*, No. 13-cv-6266, 2014 U.S. Dist. LEXIS 2111, *3 (S.D.N.Y. Jan. 8, 2014).

Here, the proposed settlement reflects a reasonable compromise of Plaintiffs' claims and disputed issues and did not result from any "overreaching" by the employer. To the contrary, the settlement was the result of vigorous arm's-length negotiations over several months, exchange and review of documents and analysis by both Parties' counsel as well as multiple emails and telephone discussions between counsel. The Parties are represented by counsel experienced in wage and

hour law who duly counseled their respective clients on the benefits and risks of continued litigation. As explained above, the settlement represents a substantial recovery of Plaintiffs' alleged unpaid wages. Settlement at this stage of the case unquestionably constitutes the most efficient and effective conclusion to this litigation. Defendant asserted legitimate substantive defenses which highlighted substantial risk to Plaintiffs' ability to continue this FLSA litigation. *Lundy v. Catholic Health Sys. of Long Island, Inc.*, 711 F.3d 106, 115 (2d Cir. 2013) (FLSA protects only minimum wage and overtime). Arm's-length negotiations between knowledgeable counsel followed, culminating in a negotiated resolution.

*     *     *     *     *

In sum, we respectfully submit that the Agreement in this matter is a fair and reasonable resolution of the bona fide disputes between the Parties. This is because the Agreement: (1) fairly accounts for Plaintiffs' possible recovery and Defendant's ability to mitigate or eliminate same; (2) enables the Parties to avoid the possible substantial burdens and expenses of establishing their respective claims and defenses and accounts for the risks in proceeding with the litigation; and (3) is the product of arm's-length bargaining between experienced counsel which was completely devoid of any semblance of fraud or collusion. *See gen. Wolinsky*, 900 F. Supp. 2d at 335. Accordingly, it is respectfully requested that the Agreement be approved in its entirety.

We appreciate Your Honor's attention to this matter. Please contact the undersigned counsel for the Parties should you have any questions regarding this submission.

Respectfully submitted,

| | |
|---|---|
| **PELTON GRAHAM LLC** | **SALKA LAW LLC** |
| By: */s/ Brent E. Pelton* | By: */s/ Gregg H. Salka* |
| Brent E. Pelton, Esq. | Gregg H. Salka, Esq. |
| 111 Broadway, Suite 1503 | One University Plaza, Suite 516 |
| New York, New York 10006 | Hackensack, New Jersey 07601 |
| Tel.: (212) 385-9700 | Tel.: (201) 880-6220 |
| *Attorneys for Plaintiffs* | *Attorneys for Defendant* |

Enclosures